PATRICK H. HICKS, ESQ., Bar # 004632
RACHEL SILVERSTEIN, ESQ., Bar # 11057
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
Telephone:    702.862.8800
Fax No.:        702.862.8811
e-mail:  phicks@littler.com
e-mail:  rsilverstein@littler.com

Attorneys for Defendant
CAESARS ENTERTAINMENT CORPORATION

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GREGORIO BRAVO, an individual,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CAESARS ENTERTAINMENT CORPORATION; d/b/a CAESARS PALACE, DOES 1 through 25, inclusive; and ROE CORPORATIONS 1 through 25, inclusive,<br><br>　　　　　Defendants. | Case No. 2:14-cv-01616-JCM-CWH<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST, THIRD, FOURTH, FIFTH, SIXTH AND EIGHTH CAUSES OF ACTION** |

Improperly named defendant, CAESARS ENTERTAINMENT CORPORATION, (hereinafter referred to as "Caesars" or "Defendant"), by and through its attorneys of record, Littler Mendelson, and pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), hereby moves this Court for an Order dismissing Plaintiff's First, Third, Fourth, Fifth, Sixth and Eighth Causes of Action as set forth in Plaintiff's Complaint.  In sum, Plaintiff failed to exhaust administrative remedies, asserts causes of action that do not exist under Nevada law, brings claims that are preempted by other Nevada statutes and fails to state a claim for certain causes of action.

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

This motion is made and supported by the attached Memorandum of Points and Authorities, all other pleadings on file with the Court in this matter and any oral argument permitted by the Court.

Dated: October 28, 2014.

LITTLER MENDELSON, P.C.

By: /s/ Rachel Silverstein
PATRICK H. HICKS, ESQ.
RACHEL SILVERSTEIN, ESQ.
Attorneys for Defendant
CAESARS ENTERTAINMENT
CORPORATION d/b/a CAESARS PALACE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiff Gregorio Bravo ("Bravo" or "Plaintiff") is a former employee of Caesars Palace ("Caesars Palace"), which is owned and operated by Desert Palace, Inc. ("Desert Palace"). The named Defendant in this case, Caesars Entertainment Corporation ("Caesars Entertainment"), never employed Plaintiff and is an erroneously named Defendant. In any event, Plaintiff has asserted several improper and unsustainable claims, necessitating partial dismissal.

Plaintiff was a Utility Porter at Caesars Palace from approximately July 2005, until April 2013, when he was terminated for his repeated failure to meet expected performance levels. As a Utility Porter, Plaintiff was responsible for cleaning certain public areas and hotel rooms. In this suit, Plaintiff claims that he was unfairly targeted and harassed by his supervisor. In reality, Plaintiff was repeatedly disciplined for, among other things, failing to meet Caesars Palace's cleanliness standards. The areas assigned to Plaintiff were found to have thick dust, noticeable black marks on walls and baseboards, handprints on the ice machine and major stains in the stairwells.

Despite his well-documented and long-lasting performance problems, Plaintiff asserts the following causes of action: (1) National Origin Discrimination; (2) Age Discrimination pursuant to N.R.S. 613.330; (3) Public Policy Tort; (4) Respondent Superior; (5) Negligent Hiring, Supervision and/or Training of Employees ("Negligent Hiring"); (6) Discrimination pursuant to N.R.S. 613.330;

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

2.

(7) Retaliation [under] 42 U.S.C. § 4000e-3; and (8) Intentional Infliction of Emotional Distress ("IIED"). There are several independent grounds for dismissal in this case:

- Plaintiff's claim for National Origin Discrimination (First and Sixth Causes of Action) is subject to dismissal because Plaintiff did not exhaust his administrative remedies with respect to that claim;
- Plaintiff's claim for "Public Policy Tort" should be dismissed because alleged discrimination cannot be vindicated through a tortious discharge claim;
- Plaintiff's claim for "Respondent Superior" should be dismissed because it is not a cause of action, but a theory of liability;
- Plaintiff's tort claim for Negligent Hiring should be dismissed because it is preempted by Nevada's Industrial Insurance Act ("NIIA"). Alternatively, this cause of action should be dismissed because Plaintiff failed to state a claim; and,
- Plaintiff failed to state a claim for IIED.

## II.   STANDARD OF REVIEW

### A.   Dismissal Pursuant to FRCP 12(b)(1)

Dismissal under FRCP 12(b)(1) is appropriate where the Court lacks subject matter jurisdiction. A plaintiff must exhaust his administrative remedies related to discrimination and retaliation claims in order for a court to obtain subject matter jurisdiction over those claims. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002). In this case, the Court lacks subject matter jurisdiction over Plaintiff's claim for National Origin Discrimination because he did not exhaust his statutorily-required administrative remedies. Accordingly, these claims must be dismissed pursuant to Rule 12(b)(1) because "a party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

### B.   Dismissal Pursuant to FRCP 12(b)(6)

A motion to dismiss should be granted where the complaint fails to allege sufficient facts to constitute a cognizable cause of action or legal theory of recovery. FRCP 12(b)(6); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive dismissal, a complaint must

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). While a pleading generally need not contain detailed allegations, it must allege sufficient facts to raise a right to relief above the speculative level. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Id.* Rather, to survive a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570 (emphasis added).

Though the party opposing a 12(b)(6) motion to dismiss is given the benefit of the doubt in that its factual allegations are accepted as true, a court will not assume the truth of legal conclusions merely because the plaintiff casts them in the form of factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (emphasis added). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level," and must do more than "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citations omitted). As the Court in *Twombly* further noted, a plaintiff must "nudge[] [its] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Id.* at 570. Because the line separating the plausible from the merely conceivable is not always a clear one, the reviewing court is to "draw on its judicial experience and common sense" in making the determination of what a plausible claim looks like. *Iqbal*, 129 S. Ct. at 1950.

In *Iqbal*, the Supreme Court provided a framework under which the reviewing court could exercise its experience and common sense. First, the court should determine which allegations merely state legal conclusions and which are indeed factual assertions. Second, the court should determine whether the factual assertions present a plausible entitlement to relief. *Id.* at 1950. In other words, a court must determine whether the remaining factual content, if true, permits a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 1949-50. Where a complaint relies on formulaic recitations of a claim or unsupported conclusions, its claims should be dismissed.

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

### III.   ARGUMENT

**A.   Dismissal is Warranted on Plaintiff's Claim for National Origin Discrimination (First and Sixth Causes of Action) Because Plaintiff Failed to Exhaust His Administrative Remedies**

In order to establish subject matter jurisdiction over his claims, Plaintiff is required to exhaust his administrative remedies. See *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). Under Title VII, a plaintiff must exhaust his administrative remedies by filing a timely charge with the Equal Employment Opportunity Commission ("EEOC") or the appropriate state agency, affording the agency an opportunity to investigate the charge. *Id.* (citing 42 U.S.C. §2000e-5(b)). Similar analysis pertains to claims for violation of Nevada's employment discrimination statutes, Nevada Revised Statute 613.300 *et seq.*, which requires that a Charge be filed within 180 days of the alleged discriminatory practice. See *Pope v. Motel 6*, 114 P.3d 277 (Nev. 2005) (requiring timely exhaustion of administrative remedies through Nevada Equal Rights Commission ("NERC")).

"The specific claims made in district court ordinarily must be presented to the EEOC." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003); citing *Albano v. Schering–Plough Corp.*, 912 F.2d 384, 385 (9th Cir.1990). However, the Ninth Circuit has held that, under limited circumstances, non-listed claims in an EEOC charge may be considered administratively exhausted and asserted in a civil action if they are "like or reasonably related to" the listed EEOC charges or if the claims fall "within the scope of an EEOC investigation that reasonably could [have been] expected to grow out of the allegations" made before the EEOC. *Leong*, 347 F.3d at 1121. In deciding whether a reasonable relationship exists, the court must determine "whether the original EEOC investigation would have encompassed the additional charges." *Id.* citing *Green v. Los Angeles County Superintendent of Sch.*, 883 F.2d 1472, 1480-81 (9th Cir. 1989) (quotation omitted).

Plaintiff's First Cause of Action is for National Origin Discrimination and his Sixth Cause of Action is for generic, unspecified discrimination under N.R.S. 613.330. However, on his Charge of Discrimination (attached to the Complaint as Exhibit 1), Plaintiff only alleges discrimination based

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

5.

upon age and retaliation. **Exhibit A (Charge of Discrimination).** To Defendant's knowledge, the Charge of Discrimination was never amended to include any other claims.

A Charge of Discrimination asserting age discrimination and retaliation is not "like or reasonably related to" a Charge asserting national origin discrimination. Moreover, the narrative in Plaintiff's Charge makes no reference at all to national origin discrimination; it mentions only age discrimination. The Ninth Circuit has acknowledged numerous times that this is insufficient. See *Leong*, 347 F.3d at 1122 (holding that the Plaintiff failed to exhaust his administrative remedies with respect to Rehabilitation Act claim, where Charge of Discrimination mentioned only disability discrimination.) See also, *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) (holding, administrative remedies were not exhausted for disability claim where Charge alleged only national origin discrimination; "It would not be proper to expand the claim as Rodriguez asks, when "the difference between the charge and the complaint is a matter of adding an entirely new basis for the alleged discrimination." [internal citations omitted]); *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir.1987) (holding that allegations of sex and age discrimination in civil complaint were not encompassed by charge filed with administrative agency alleging only national origin discrimination); and *Bower v. City & Cnty. of San Francisco*, 490 F. App'x 854 (9th Cir. 2012) (race and religious discrimination claims were not like or reasonably related to allegations of disability discrimination). Furthermore, there is simply no reason to believe that an investigation related to alleged national origin discrimination would have been spurred by a Charge alleging age discrimination.

Accordingly, Plaintiff has failed to exhaust his administrative remedies with respect to his claim for National Origin Discrimination and his First Cause of Action must be dismissed. Additionally, to the extent Plaintiff's Sixth Cause of Action for unspecified discrimination under N.R.S. 613.330 is premised on national origin discrimination, it should also be dismissed.

### B. Plaintiff's Claim for "Public Policy Tort" (Third Cause of Action) Fails Because Discrimination is Not an Exception to the At-Will Doctrine

At least one Court in this jurisdiction has held that there is no Public Policy Tort recognized by Nevada law. *Okeke v. Biomat USA, Inc.*, 927 F.Supp.2d 1021, 1028 (D. Nev. 2013) (noting,

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

"Nevada's public policy against impermissible discrimination cannot be vindicated through a tortious discharge public policy tort, but rather, must be pursued through statutory remedies." Citing *Herman v. United Brotherhood of Carpenters & Joiners of America, Local Union No. 971*, 60 F.3d 1375, 1385 (9th Cir.1995)). It is worth noting that the *Okeke* case was brought by Plaintiff's counsel in the instant action.

Employees in Nevada are presumptively at-will, meaning an employer may terminate their employment for any reason or no reason at all. *Vancheri v. GNLV Corp.*, 105 Nev. 417, 420-421, 777 P.2d 366, 368-369 (1989). The tort of wrongful discharge is a "severely limited" exception to this doctrine, confined "to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Sands Regent v. Valgardson*, 105 Nev. 436, 440, 777 P.2d 898, 900 (1989). See, e.g., *Hansen v. Harrah's*, 100 Nev. 60, 675 P. 2d 394 (1984) (stating that a public policy claim exists when one is discharged for seeking workers' compensation benefits). The Nevada Supreme Court has already held **that age discrimination does not fit into the public policy exception to the "at-will" employment doctrine.** *Sands Regent*, 105 Nev. at 439. In fact, Nevada has recognized only the following types of wrongful discharge actions: (1) discharge of an employee for seeking industrial insurance benefits; (2) discharge of an employee for performing jury duty; (3) discharge of an employee for refusing to work under unreasonably dangerous conditions; or (4) refusing to engage in or objecting to conduct that was violative of public policy. *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 910 (D. Nev. 1993). See also, *Herman v. United Brd. of Carpenters & Joiners of Am.*, 60 F.3d 1375, 1385-86 (9th Or. 1995) ("Nevada's public policy against impermissible discrimination cannot be vindicated through a tortious discharge public policy tort, but rather, must be pursued through statutory remedies"; affirming dismissal of public policy tort claim based on age and disability discrimination).

Here, Plaintiff does not identify any public policy implicated in his termination, other than the policy against discrimination, which is adequately addressed by Nevada's statutory scheme. See Complaint, ¶¶ 57-62. *Sands Regent*, 105 Nev. at 439-440 ("Clearly, Nevada has a public policy against age discrimination… Moreover, as noted hereafter, the Legislature has addressed the gravity of violating Nevada's public policy against age discrimination by defining the extent of the remedy

LITTLER MENDELSON, P.C
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

available to parties injured by such discrimination."). The allegations related to Plaintiff's claim for "Public Policy Tort" refer *only* to "Nevada's public policy against Age and National Origin discrimination." See Complaint, ¶ 60.

Plaintiff is clearly claiming discrimination and retaliation, not any additional, independent violation of public policy. As in the cases noted above, the Court should dismiss this claim because (alleged) discrimination is not an independent violation of public policy and Plaintiff has adequate statutory remedies under Federal and Nevada anti-discrimination statutes.

### C. Plaintiff's Claim for "Respondent Superior" (Fourth Cause of Action) Fails Because it is not a Cause of Action

Plaintiff's Fourth Cause of Action for "Respondent Superior" is not a cognizable cause of action. "Respondeat superior is a theory of holding an employer vicariously liable for the torts of its employee, it is not an independent cause of action." *Fernandez v. Penske Truck Leasing Co.*, 2012 WL 1832571 *1 (FN1) (D. Nev. May 18, 2012); citing *Cruz v. Durbin*, 2011 U.S. Dist. LEXIS 51057, *3, 2011 WL 1792765 (D. Nev. 2011). Once again, Plaintiff's counsel should already know this, because the Court in *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028-29 (D. Nev. 2013) ruled against Plaintiff's counsel and dismissed a virtually identical claim: "Okeke has alleged a claim for vicarious liability, but this is a theory of liability, not an independent cause of action."

Accordingly, Plaintiff's Fourth Cause of Action for "Respondent Superior" should be dismissed.

### D. Plaintiff's Negligent Hiring Claim (Fifth Cause of Action) is Barred by the Nevada Industrial Insurance Act

It is well established in Nevada that the terms and conditions of the NIIA provide the <u>exclusive remedy</u> to any employee who is negligently injured in the course and scope of her employment. *Conway v. Circus Circus Casinos*, 116 Nev. 870 (2000) (exclusive remedy provision of NIIA barred plaintiff's negligence and other common law tort claims) (emphasis added); *Cummings v. United Resort Hotels, Inc.*, 85 Nev. 23 (1969). In enacting the NIIA, the Nevada legislature created a comprehensive system of compensation for employees who are injured on the job. Under this system of workers' compensation, the employer is relieved of all other liability for

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

8.

personal injury to its employees arising out of and in the course of employment. See NRS 616A.020(1)-(2); NRS 616B.612(4).

Plaintiffs seeking redress for injuries stemming from acts or omissions in the employment context, exactly what Plaintiff seeks in this case, are preempted by the NIIA. This has been recognized time and again in this jurisdiction. In *Wood v. Safeway, Inc.*, 121 Nev. 724, 732, 121 P.3d 1026, 1031 (2005), the Nevada Supreme Court confirmed that the NIIA preempted a plaintiff's claim for negligent hiring (among others) was preempted by the NIIA. In *Russo v. Clearwire US, LLC*, 2013 WL 1855753, *8 (D. Nev. April 30, 2013), the Court dismissed a negligent hiring claim because the plaintiff's stress-related injuries allegedly caused by the employer's negligent hiring was based on conduct that occurred throughout plaintiff's employment. See also, *Young v. Zappos.com, Inc.*, 2010 WL 1612140, *5 (D. Nev. April 19, 2010) (holding, sexual harassment claim arising in the course and scope of employment was barred by NIIA).

There are no allegations in Plaintiff's Complaint of any conduct occurring outside the workplace. Accordingly, Plaintiff's claim for Negligent Hiring should be dismissed as barred by the NIIA.

### 1. Alternatively, Plaintiff Fails to State a Claim for Negligent Hiring

The Nevada Supreme Court has held that to state a claim for negligent hiring, training, and supervision, a plaintiff must allege that the employer failed to use reasonable care in the hiring, training, and/or supervision of its employees, making sure that the employees are fit for their positions, and show that the alleged negligent hiring, training, and supervision resulted in an injury to a third person by the employee. *Hall v. SSF, Inc.*, 112 Nev. 1384, 1392-93 (1996). "Such claims are usually raised in Nevada when a third party is harmed by an employee and it is alleged that, had the employer exercised reasonable care in supervising the employee, the injury would not have occurred." *de los Reyes v. Southwest Gas Corp.*, 2007 WL 2254717 (D.Nev. Aug. 3 2007); citing, e.g., *Vinci v. Las Vegas Sands, Inc.*, 984 P.2d 750 (Nev.1999). Specifically, the Supreme Court in *Hall* held that:

> The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position. (Citation omitted). An employer breaches this duty when it

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

9.

hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities.

*Hall*, 112 Nev. at 1392.

This line of cases indicates that the duty imposed on the employer is to reasonably discover whether its employee has "dangerous propensities" that could result in physical injury perpetrated by that employee on a third-party in the workplace. As this District Court has observed:

> Although the Nevada Supreme Court has never explicitly addressed the issue, Nevada cases interpreting negligent supervision and hiring claims appear to require at least a threat of physical harm which is absent here. See e.g., *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev.1996) (tort of negligent hiring imposes a duty on the employer to conduct a reasonable background check); *Rockwell v. Sun Harbor Budget Suites*, 930 P.2d 94, 1182 (Nev.1996) (duty to investigate violent propensities of employees to prevent undue risk of harm to others). Thus, we predict that, given the opportunity to do so, the Nevada Supreme Court would explicitly rule that physical harm is necessary for a negligent hiring, retention and supervision claim in Nevada.

*Barnes v. National Council of Juvenile & Family Court Judge, Fund, Inc.*, 2010 WL 5102258, *2 (D. Nev. Dec. 3 2010) (dismissing IIED claim based on the foregoing observation).

In fact, the federal district court for Nevada has repeatedly ruled that a negligent hiring, supervision, and training claim requires that the plaintiff suffer physical harm or injury. See *Brophy v. Day & Zimmerman Hawthorne Corp.*, 799 F. Supp. 2d 1185, 1201-1202 (D. Nev. 2011) (dismissing claim for negligent supervision where there was no allegation of physical harm); *Peterson v. New Castle Corp.*, 2:11-cv-00764-RCJ-CWH, 2011 WL 5117884, at FN2 (D. Nev. Oct. 27, 2011) (had negligent training and supervision claim survived dismissal on other grounds, claim would have failed on the merits because there was no allegation of physical harm); *Hall v. Raley's*, 3:08-cv-00632-RCJ-VPC, 2010 WL 55332, at *9 (D. Nev. Jan. 6, 2010) (predicting that Nevada courts would require physical harm for a negligent retention and supervision claim to survive); *Houston v. Wynn Resorts*, 2:06-cv-01502-KJD-GWF, 2007 WL 1288813, at *1 (D. Nev. May 1, 2007) ("a negligent hiring, training and supervision case requires that Plaintiff suffer a physical harm or injury, not mere economic loss"); *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1157 (D. Nev. 2005) (granting motion to dismiss negligent hiring and retention claim because Nevada law requires

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

10.

physical injury under economic loss doctrine).

The Court should apply the same logic in this case. Plaintiff's Negligent Hiring claim is based only on the idea that, "Defendant should have known of the propensity of its supervisors and its employees to cause emotional and financial injury to employees." See Complaint, ¶ 69. There is no allegation of physical injury to anyone. Consequently, Plaintiff's claim for Negligent Hiring should be dismissed.

### E. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress (Eighth Cause of Action)

To state a claim for IIED, Plaintiff must allege facts showing: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff having suffered severe or extreme emotional distress and (3) actual or proximate causation. *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 91-92 (1981) (citations omitted). Plaintiff's claim for IIED fails as a matter of law because he does not allege any facts that suggest either extreme and outrageous conduct or severe emotional distress.

#### 1. Plaintiff Does Not Point to Any Extreme and Outrageous Conduct

As recognized by the Nevada Supreme Court in *Maduike v. Agency Rent-A-Car*, "extreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike*, 114 Nev. 1, 2 (1998). Indeed, "persons must necessarily be expected and required to be hardened… to occasional acts that are definitely inconsiderate and unkind. *Id.* at 4 (citations omitted). The Ninth Circuit has interpreted Nevada law in this same manner, holding that "[l]iability for emotional distress will not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (quoting RESTATEMENT (SECOND) OF TORTS, ¶46 cmt d. (1965)). In the employment context, IIED is particularly unusual because, as this District Court has held, "termination of employees, even in the context of a discriminatory [employee] policy, does not in itself amount to extreme and outrageous conduct actionable under an intentional infliction of emotional distress theory." *Hirschhorn v. Sizzler Rest. Int'l, Inc.*, 913 F. Supp. 1393, 1401 (D. Nev. 1995).

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

11.

Here, Plaintiff's factual allegations fall far short of the necessary extreme and outrageous conduct. Aside from his garden variety discrimination allegations, Plaintiff claims that one of his supervisors, Ms. Kukie, subjected him to unwarranted and excessive discipline. *See* Complaint, ¶¶ 19-38. Plaintiff requested "Step 1 Meetings" to address Ms. Kukie's alleged "excessive yelling, disrespectful comments, and swearing to Mr. Bravo." *Id.* at ¶ 21. Ms. Kukie also said that Plaintiff failed to adequately clean certain areas, with which another supervisor disagreed. *Id.* at ¶ 22-23. Ms. Kukie also supposedly told Plaintiff, in front of co-workers, that "every fucking door was dirty." *Id.* at ¶ 28. Plaintiff also asserts that he was issued unfair discipline and was not given an adequate explanation as to why he was being disciplined. *Id.* at ¶¶ 32-36.

Every single one of these allegations falls squarely within the 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' classification. Assuming Plaintiff's allegations are true, Ms. Kukie's conduct may accurately be described as unprofessional or unkind. Even if true, her actions are certainly not extreme, outrageous, or 'outside all possible bounds of decency.' Accordingly, Plaintiff has failed to state a claim for IIED and this cause of action should be dismissed.

### 2.   Plaintiff Did Not Suffer Severe Emotional Distress

Generally, physical injury or illness caused by the alleged emotional distress is required when there is no physical impact to the Plaintiff. *Settlemyers v. Play LV Gaming Operations*, 2011 WL 1042569 (D. Nev. Mar. 18, 2011) (granting motion to dismiss where plaintiff did not "allege the type of physical manifestations of emotional distress required to support an IIED claim); citing *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev.1998). To sustain this claim, the Plaintiff must have suffered so severely "that no reasonably person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993).

As in *Settlemyers*, the Plaintiff here does not allege any physical illness or injury, only that he suffered "worry, anxiety and anguish." *See* Complaint, ¶ 88. Moreover, as discussed above, the supposed outrageous conduct was not outrageous at all, making an allegation of physical injury or illness all the more necessary. *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev.1983) ("The less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

from the emotional distress.") Plaintiff's conclusory statement that he suffered severe emotional distress is also insufficient. See Complaint, ¶ 87. Clearly, this is insufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949-50.

Because Plaintiff has failed to provide facts sufficient to show both extreme and outrageous conduct and severe emotional distress, his IIED claim should be dismissed.

## IV. CONCLUSION

Based upon the foregoing, Defendant requests that the Court dismiss Plaintiff's facially deficient claims for National Origin Discrimination, Public Policy Tort, Respondent Superior, Negligent Hiring, Discrimination pursuant to N.R.S. 613.330, and Intentional Infliction of Emotional Distress with prejudice.

Dated: October 28, 2014

Respectfully submitted,

PATRICK H. HICKS, ESQ.
RACHEL SILVERSTEIN, ESQ.
LITTLER MENDELSON, P.C.

Attorneys for Defendant
CAESARS ENTERTAINMENT CORPORATION

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

**PROOF OF SERVICE**

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, Nevada 89169-5937. On October 28, 2014, I served the within document(s):

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST, THIRD, FOURTH, FIFTH, SIXTH AND EIGHTH CAUSES OF ACTION**

☑ by serving the following parties electronically through CM/ECF.

☐ by facsimile transmission at or about _____ on that date. The transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is attached. The names and facsimile numbers of the person(s) served are as set forth below.

☐ by placing a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Las Vegas, Nevada addressed as set forth below.

☐ by personally delivering a copy of the document(s) listed above to the person(s) at the address(es) set forth below.

Patrick W. Kang, Esq.
Kyle R. Tatum, Esq.
Kang & Associates, PLLC
6480 W. Spring Mountain Road
Suite 1
Las Vegas, NV 89146

I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service. Under that practice it would be deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight delivery service pick-up box or office on the same day with postage or fees thereon fully prepaid in the ordinary course of business. I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 28, 2014, at Las Vegas, Nevada.

/s/ Maribel Rodriguez
Maribel Rodriguez

Firmwide:129631123.2 013234.2487

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800